994 So.2d 264 (2008)
Ex parte BROOKWOOD MEDICAL CENTER
(In re James L. Sallas, by and through his wife and next friend Sara Sallas, et al.
v.
Brookwood Medical Center et al.).
1061307.
Supreme Court of Alabama.
May 23, 2008.
Thomas A. Kendrick and Holly S. Bell of Norman, Wood, Kendrick & Turner, Birmingham, for petitioner.
Nat Bryan, Michael K. Beard, and Thomas M. Powell of Marsh, Rickard & Bryan, P.C., Birmingham, for respondents.
MURDOCK, Justice.
Brookwood Medical Center ("Brookwood") seeks a writ of mandamus directing the Jefferson Circuit Court to enter an *265 order granting separate trials in a civil action filed against Brookwood and several fictitiously named defendants by James L. Sallas ("Mr.Sallas"), an alleged incompetent person suing through his wife and next friend Sara Sallas, by Sara, individually, and by Belinda J. Helms, individually and as executrix of the estate of her deceased husband, James Earl Helms. We grant the writ.

Facts and Procedural History
In June 2005, Sara, individually and as wife and next friend of Mr. Sallas, and Belinda, individually and as executrix of the estate of her deceased husband, filed a single complaint in the Jefferson Circuit Court. The complaint, as subsequently amended, alleged:
"4. On or about June 24, 2004 an adult male referred to [as T.B.] was admitted to the [Brookwood] psychiatric unit with a number of significant diseases, including Intermittent-Explosive Disorder (IED). IED is an impulse control disorder characterized by specific episodes of violent and aggressive behavior that may involve harm to others....
"5. Between June 24, 2004 and July 22, 2004 [T.B.] engaged in a number of violent acts. For example, on a number of occasions the nursing staff found [T.B.] beating his head on the floor or wall. After one such outburst, [T.B.] was taken to the [Brookwood] emergency room where he was diagnosed with a broken nose. Not only did [T.B.] injure himself, but on a number of occasions, including, but not limited to July 14, 2004, July 20, 2004, and July 22, 2004, [T.B.] assaulted and battered Brookwood staff members. Indeed, the situation became so dangerous that on July 22, 2004, a Petition was filed requesting that the Probate Court of Jefferson County order the aggressor to be committed to a state mental hospital.
"6. On or about June 16, 2004, James Earl Helms was admitted to the geriatric floor at [Brookwood] for treatment of cerebral bleeding, seizures, vascular dementia, and depression. While on the geriatric floor, Mr. Helm's physician became concerned that because of Mr. Helm's strength and his `friendliness' towards other patients, Mr. Helms, in his interaction with other patients, might injure the other patients. Mr. Helms's physician was also concerned that another patient might take offense at Mr. Helms's `friendliness' and respond by injuring Mr. Helms. Mr. Helm's physician told Mrs. Helms that her husband needed to be admitted to the psychiatric unit for his own protection and that he would receive one-on-one supervision and care. Mr. Helms was admitted to the [Brookwood] psychiatric unit ... on June 23, 2004.
"7. Sometime between June 23, 2004 and July 24, 2004, the staff at the [psychiatric] unit assigned Mr. Helms and [T.B.] to reside in the same room. At no time prior to July 24, 2004, did the staff inform any family member of Mr. Helms that [T.B.] had assaulted and battered staff members in the unit.
"8. On or about July 24, 2004, and possibly on at least one prior occasion, [T.B.] assaulted Mr. Helms. As a result of the assault, Mr. Helms's left elbow, right shoulder, face, head and buttocks were injured. [The Brookwood psychiatric-unit] staff did not examine Mr. Helms nor did they order any diagnostic tests to see what injuries he suffered as a result of the assault. The staff merely informed Mrs. Helms that her husband had a slight cut on his arm that resulted from a `little altercation.' On July 25, 2004 Mrs. Helms visited her husband and found that he had two black eyes. *266 The staff members were not able to give Mrs. Helms an explanation.
"9. Since 1998, James Sallas suffered from vascular Dementia and Bipolar Affective Disorder. On or about July 21, 2004, Dr. Ed Logue, at Mr. Sallas's request, admitted Mr. Sallas to the psychiatric unit at Brookwood because Mr. Sallas had homicidal ideations. After [T.B.] assaulted Mr. Helms, on July 24, 2004, the [psychiatric-unit] staff inexplicably assigned Mr. Sallas to [T.B.]'s room.
"10. On or about July 25, 2004, and possibly on prior occasions, [T.B.] also assaulted Mr. Sallas and knocked him unconscious. As a result of the assault, Mr. Sallas suffered numerous injuries, including a skull fracture, a left frontal subdural hematoma, subarachnoid hemorrhaging and a fractured toe. The [psychiatric-unit] staff neither took immediate steps to determine what injuries Mr. Sallas suffered in the attack nor did they contact Mrs. Sallas to inform her of the assault until after Mrs. Sallas had received a call from her husband's physician notifying her of the assault.
"11. On or about July 27, 2004 Brookwood discharged Mr. Helms to the Pleasant Grove Nursing Home. After getting Mr. Helms registered, Mrs. Helms went to her husband's room where the nursing home staff was helping Mr. Helms change his clothes. As the staff attempted to undress Mr. Helms they found that in addition to the black eyes and elbow laceration, Mr. Helms had bruises over his entire body. The bruising was so extensive that the Director of Nursing at Pleasant Grove Nursing Home refused to accept Mr. Helms for fear that they, at a later date, might be blamed for inflicting the injuries to Mr. Helms. After calling the emergency room at Brookwood and making arrangements for Mr. Helms to be returned to Brookwood, the Director of Nursing told Mrs. Helms that she was to take her husband back to the emergency room for evaluation.
"12. After being examined in the emergency room, Mr. Helms was found to have a wrist fracture and bleeding in the brain. Mr. Helms was admitted to the geriatric floor at Brookwood where his condition continued to decline until he was discharged to [hospice at Brookwood] and thereafter died on August 7, 2004."
The complaint continues by stating claims alleging that Brookwood (1) "negligently and/or wantonly provided medical services to Mr. Sallas and Mr. Helms and negligently and/or wantonly breached [the] acceptable standard of practice in providing such medical services," (2) fraudulently "suppressed from the families of Messrs. Sallas and Helms the truth concerning [T.B.] and his violent tendencies," and (3) committed the tort of outrage based on the manner in which Brookwood conducted itself with respect to Mr. Sallas and Mr. Helms and their families.
On July 6, 2005, Brookwood filed a "Motion to Sever Claims," pursuant to which Brookwood sought the severance of the Sallas claims from the Helms claims, such that there would be "two separate actions, each case with its own civil action docket number." Brookwood argued that allowing the case "to proceed as a single action, rather than two separate actions, will only confuse the jury and greatly prejudice [Brookwood]" and that allowing the case "to move forward as a single action ... [would frustrate] the very purpose and intent of the Legislature in enacting Alabama Code [1975,] § 6-5-551," which is part of the Alabama Medical Liability Act, Ala.Code 1975, § 6-5-540 et seq. ("the AMLA"). The trial court conducted a *267 hearing on Brookwood's motion, and on July 26, 2005, it entered an order, which states: "[Brookwood]'s pending Motion to Sever is ... denied, but the Court defers consideration of whether separate trials may be warranted in this case." Brookwood has not sought relief in this Court from the trial court's denial of its motion to sever; therefore, we do not have before us any question regarding the propriety of the joinder of the various claims in a single action.
In February 2007, Brookwood filed a "Motion for Separate Trials," requesting, pursuant to Rule 42(b), Ala. R. Civ. P., that the trial court conduct separate trials as to the Sallas claims and the Helms claims. Brookwood asserted that the failure to conduct separate trials would frustrate the purpose and intent of the last sentence of § 6-5-551. Section 6-5-551 provides, in part:
"In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, whether resulting from acts or omissions in providing health care, or the hiring, training, supervision, retention, or termination of care givers, the [AMLA] shall govern the parameters of discovery and all aspects of the action.... Any party shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission."
(Emphasis added.)[1] Brookwood also argued:
"Additionally, while the claims asserted by both sets of plaintiffs are governed by the AMLA, Mr. and Mrs. Sallas have made allegations of negligence and wantonness, which will involve compensatory and punitive damages, and Ms. Helms asserts a claim of wrongful death, which will be strictly punitive in nature. In seeking punitive damages, Mr. and Mrs. Sallas will have to prove wantonness by clear and convincing evidence whereas Ms. Helms will have to prove the wrongful death claim by substantial evidence. Thus, the plaintiffs will have different burdens of proof. To allow Mr. and Mrs. Sallas' claims against Brookwood for negligence and wantonness to be tried with Ms. Helms' claim against Brookwood for wrongful death will only confuse the jury and will greatly prejudice this defendant."
The Sallases and Belinda Helms filed a response to Brookwood's motion for separate trials, arguing, in part, that, rather than ordering separate trials, the trial court could give limiting instructions to the jury concerning the proper consideration of the evidence for each plaintiff's claims. Brookwood replied to the plaintiffs' limiting-instruction argument by arguing that the use of limiting instructions would neither "resolve any non-compliance" with § 6-5-551 nor "rectify the prejudice that will result to Brookwood from allowing evidence of the incident between Mr. Sallas and [T.B.] to be admitted during the trial of Ms. Helms' claims." Brookwood further noted that
"[h]ad the claims by each set of plaintiffs in fact been filed as separate lawsuits, then without question, during the trial of Ms. Helms' claims, evidence of the incident between Mr. Sallas and [T.B.] would not be admissible pursuant to Alabama Code [1975,] § 6-5-551, as it is an `other act or omission.' By filing the *268 instant lawsuit in behalf of two separate sets of plaintiffs for alleged breaches in the standard of care occurring on two different days against a single defendant, the plaintiffs are seeking to circumvent the express language of Alabama Code [1975,] § 6-5-551."
In May 2007, the trial court entered an order denying Brookwood's motion for separate trials. Among other things, the trial court expressed its intention, in lieu of ordering separate trials, to give "limiting instructions" to the jury in relation to evidence that would not be relevant to both sets of claims.
Brookwood then filed this petition for a writ of mandamus. This Court stayed the trial of the case pending its decision on Brookwood's petition.

Standard of Review
Mandamus is an extraordinary writ by which "a party seeks emergency and immediate appellate review of an order that is otherwise interlocutory and not appealable." Rule 21(e)(4), Ala. R.App. P. Mandamus is appropriate
"`where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'"
Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10 (Ala.2003) (quoting Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995)). In part, this Court may issue a writ of mandamus "to prevent an abuse of discretion, or to correct an arbitrary action outside of the exercise of a reasonable discretion." Foshee v. State, 210 Ala. 155, 157, 97 So. 565, 566 (1923). A petition for a writ of mandamus is an appropriate means for challenging a trial court's ruling on a motion for separate trials. See Ex parte Skelton, 459 So.2d 825 (Ala.1984).

Discussion
Rule 42(b), Ala. R. Civ. P., states that the trial court may order separate trials "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." As it did in the trial court, Brookwood in its petition relies upon Rule 42(b) and § 6-5-551 to argue that the trial court exceeded its discretion when it denied Brookwood's motion for separate trials.
In their response to Brookwood's petition, the Sallases and Belinda Helms correctly note that the AMLA does not speak per se to the issue of separate trials. It also is true, as they point out, that the trial court generally has significant discretion in deciding whether separate trials are necessary in order to achieve the objectives expressed in Rule 42 or whether limiting instructions to the jury would be appropriate or sufficient. See, e.g., Ex parte R.B. Ethridge & Assocs., Inc., 494 So.2d 54, 57-58 (Ala.1986).
Brookwood specifically argues, however, that, as applied to the particular claims presented in this case, § 6-5-551 necessarily removes from the trial court any discretion to allow the introduction, in the trial of the Helms claims, of any evidence of Brookwood's alleged wrongful acts and omissions as to Mr. Sallas, whether with or without limiting instructions. This argument is well-taken. If both sets of plaintiffs are allowed to prosecute their claims in the same trial, a violation of § 6-5-551 is unavoidable. In entering the May 2007 order denying Brookwood's motion for separate trials, the trial court therefore exceeded its discretion.
Accordingly, Brookwood's petition for the writ of mandamus is granted. The trial court is directed to vacate its May *269 2007 order and to enter an order providing for separate trials.
PETITION GRANTED; WRIT ISSUED.
WOODALL, STUART, and BOLIN, JJ., concur.
LYONS, J., concurs specially.
LYONS, Justice (concurring specially).
I concur fully in the main opinion.
The complaint filed on behalf of Mr. Helms, the first patient alleged to suffer from being placed in proximity to T.B., must comply with § 6-5-551, Ala.Code 1975, which requires that "[t]he plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts." Obviously, the subsequent conduct of T.B. allegedly directed toward Mr. Sallas would not be appropriate for inclusion in Belinda Helms's complaint, which is limited by § 6-5-551 to "each act and omission alleged by plaintiff to render the health care provider liable to plaintiff."
Section 6-5-551 concludes with the following statement: "Any party shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission." (Emphasis added.) "Other" obviously refers to an act or omission other than those acts or omissions alleged in the complaint. See Ex parte Anderson, 789 So.2d 190, 198 (Ala.2000) ("Discovery of any incidents of malpractice other than those specifically alleged in the complaint is precluded."). Consequently, under § 6-5-551, evidence as to Mr. Sallas would not be admissible in the trial of Belinda Helms's claim.
The trial court concluded that the portion of § 6-5-551 precluding introduction of evidence of Mr. Sallas's injury in the trial of Belinda Helms's claim could be honored in a trial involving both plaintiffs by the use of limiting instructions to the jury. However, § 6-5-551 condemns introduction of extraneous evidence at trial. The breadth of this prohibition is ill-suited to avoid its violation by a limiting instruction given after introduction of the condemned evidence in a trial involving both plaintiffs.
NOTES
[1] Whether the claims asserted by the Sallases and Belinda Helms are governed by the AMLA is not an issue presented by the petition; all parties take the position in their briefs to this Court that they are.