BOLIN, Justice.
Walter Griffin petitions this Court for a writ of mandamus directing the trial court to dismiss as untimely Mary Howard’s claims against him. We deny the petition.

Facts and Procedural History

Southeast Pallet and Box[1] is in the business of recycling wooden pallets and producing new pallets. In 2002, Southeast Pallet hired Mac Equipment Company, Inc. (“Mac”), to design a certain board-cutting machine for its plant. On April 23, 2003, Howard, who was employed by Southeast Pallet, was injured while working at the machine designed by Mac. She had never worked on this machine before the day she was injured. A conveyor belt fed wooden boards into the machine. Howard was told to keep the wooden boards in a straight line on the conveyor belt and that if any boards fell to the ground, to pick them up and place them back on the conveyor belt. While Howard was working at the machine, Mark Fuhr-long, an employee of Mac, was adjusting the machine. When Howard bent down to pick up a board that had fallen from the conveyor belt, the sleeve of her shirt got caught in the chain and sprocket of the machine, severing her arm. The safety guard designed to cover the chain and sprocket was not installed on the machine. On the day of the accident, Walter Griffin was employed by Southeast Pallet as a “gopher”’ picking up the mail, taking deposits to the bank, and other small jobs. Walter had recently sold his interest in Southeast Pallet to his son, Woody Griffin.
Howard sued Southeast Pallet, seeking to recover worker’s compensation benefits for her injury. On June 27, 2003, in a separate action Howard sued Mac and Fuhrlong, alleging negligence and wantonness in designing, building, installing, and adjusting the machine. She also sued several fictitiously named defendants, including “the person, firm, corporation who designed, manufactured, installed, set-up, and adjusted a piece of machinery at Southeast Pallet and Box which caused [Howard] to suffer serious bodily injury on the occasion complained of in [Howard’s] complaint” and “those persons, firms or corporations responsible for providing and installing a guard for the chain and sprockets for the machine manufactured by the defendant Mac Equipment Co., all of whose true names are otherwise unknown but will be substituted by amendment when ascertained.”
In response to discovery requests, Mac, on December 15, 2003, produced documents containing written quotes and contracts prepared by Mac and sent to Southeast Pallet regarding the design and specifications for the machine on which *433 Howard was injured. Two of the documents were addressed to Walter Griffin at Southeast Pallet and one of the documents was addressed to Woody Griffin at Southeast Pallet.
On February 3, 2004, Southeast Pallet filed a motion to intervene in Howard’s action against Mac and Fuhrlong, seeking subrogation from Mac of the worker’s compensation and medical benefits Southeast Pallet paid to Howard. On August 19, 2004, the trial court granted the motion.
On October 7, 2004, Howard filed a motion to amend her complaint to assert a claim against her supervisor, Tony Randall Emfinger, and other fictitiously named defendants. Howard identified the fictitiously named defendants as “that person or persons who were the supervisor(s) of [Howard] on the occasion complained of in [Howard’s] complaint” and “those persons, firms, or corporations who violated § 25-5-11 of the Code of Alabama 1975, on the occasion complained of in [Howard’s] complaint, all of whose true names are otherwise unknown but will be substituted by amendment when ascertained.” Howard alleged that Emfinger and the fictitiously named defendants had violated § 25-5-11(c)(2), Ala.Code 1975, by requiring her to work on a machine without the safety guard in place with the knowledge that injury would likely occur. On December 17, 2004, the trial court granted the motion to amend.
Howard attempted to serve Emfinger on several occasions at various addresses, but Emfinger had moved often, and ultimately Howard served Emfinger on January 7, 2006. On January 25, 2006, Emfinger filed an answer, pro se, stating that he was not responsible for Howard’s injuries and that Walter Griffin had assigned Howard to work at the machine. On January 31, 2006, Emfinger filed an affidavit stating, in pertinent part:
“I was employed as a machine operator and maintenance man. Mary Howard was taken to the back of a board cutting machine by Walter Griffin. The machine was kicking the boards sideways because the blades were dull. Walter Griffin slid the machine guard back which exposed the hydraulics and chain drive. Management did not like to shut the machine down because it cut into production time. Walter Griffin had placed people here for about a week. They were to keep the boards straight as they passed through the machine. Several people had gotten their hand caught in the machine doing this. I reported this to Walter Griffin and Wayne Gill. They did nothing about this. About two hours later I heard one of the employees scream ‘shut it off.’ I looked up and saw Mary caught up in the machine.”
That same day, Howard filed a motion to again amend her complaint, to substitute Walter Griffin as the fictitiously named defendant who had supervised Howard and the fictitiously named defendant who had violated § 25-5-11 by removing a safety guard from the machine.
Mac had attempted to depose Walter Griffin in 2003 or 2004. On April 12, 2004, Mac sent Walter a “re-notice” of his deposition set for May 19, 2004. Mac attempted to depose Walter on July 22, 2005, but that deposition was canceled because of work schedules at Southeast Pallet. Walter’s deposition was to be scheduled for September 2005, but the deposition did not take place. On May 29, 2007, Walter was deposed; he stated that he was not at the plant on the day of Howard’s accident, and *434 he denied removing the safety guard from the machine.
On October 1, 2007, Walter filed a motion for a summary judgment, arguing that Howard’s claims against him were time-barred because Howard was not ignorant of his identity well before she amended her complaint to name him as a defendant and she did not use due diligence in substituting him for a fictitiously named defendant so as to invoke the relation-back principles of Rule 9(h) and Rule 15(c), Ala. R. Civ. P. Specifically, Walter argues that Howard was aware that he was involved with the design, performance, installation, and operation of the board-cutting machine because of the materials produced in discovery on December 15, 2003, which were specifications and contracts regarding the machine and which were addressed to Walter. Walter stated in the brief in support of his summary-judgment motion:
“Shortly after her accident on April 23, 2003, [Howard] retained an attorney. Her attorney advised Southeast Pallet by way of a letter dated May 2, 2003, that [Howard] had retained his services .... The letter further refers to: Willful and intentional conduct on the part of your supervisors, managers and officers in causing serious bodily injury to Mary Howard in violation of 25-5-11 of the Code of Alabama, 1975.’ This letter further states that ‘the [board-cutting] machine was designed by certain management employees [of Southeast Pallet] with the assistance of Mac Equipment’ and that it “was designed in such a hazardous manner that it was overwhelmingly foreseeable that someone would get seriously injured while operating the machine.’ ... Clearly [Howard] knew that someone at Southeast Pallet was involved in the design of the machine that injured her and that this person should be a defendant.
“By December of 2003, [Howard] also had in her possession the contracts/quotes between Mac and Southeast Pallet regarding the design, requirements, performance, construction and installation of the machine that eventually injured her.... These contract documents clearly reflect that Walter Griffin and his son Woody Griffin were the representatives of Southeast Pallet who were working with Mac.
“[Howard] also had the address of Southeast Pallet and could have propounded subpoenas or taken depositions to develop this information further. She knew of the identity of Walter Griffin by December 15, 2003, and could have deposed Mr. Griffin and his son Woody Griffin at that time. [Howard] also knew employees at Southeast Pallet, one of whom was her own cousin from whom she could have obtained information. Exactly as in McGhee [v. Martin, 892 So.2d 398 (Ala.Civ.App.2004) ], [Howard] could have easily obtained information from these sources — which she was quite aware of — prior to the expiration of the statute of limitations. The fact that she did not shows that she did not exercise due diligence in adding Walter Griffin as a defendant in this case.”
In response, Howard argued that after she received discovery materials from Mac, she amended her complaint to add Emflnger, the fictitiously named defendant who supervised Howard, and the fictitiously nartied defendant who had violated § 25-5-11 by removing a safety guard from the machine. She stated that several attempts were made to depose Walter, but those depositions were canceled by Walter’s attorney. On February 7, 2008, the trial court denied Walter’s summary-judgment motion. Walter timely filed a petition for a writ of mandamus with this *435 Court.[2]

Standard of Review

“Mandamus is an extraordinary writ by which ‘a party seeks emergency and immediate appellate review of an order that is otherwise interlocutory and not appealable.’ Rule 21(e)(4), Ala. R.App. P. Mandamus is appropriate
“ ‘ “where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” ’
“Ex parte Perfection Siding, Inc., 882 So.2d 307, 809-10 (Ala.2003) (quoting Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995)). In part, this Court may issue a writ of mandamus ‘to prevent an abuse of discretion, or to correct an arbitrary action outside of the exercise of a reasonable discretion.’ Foshee v. State, 210 Ala. 155, 157, 97 So. 565, 566 (1923).”
Ex parte Brookwood Med. Ctr., 994 So.2d 264, 268 (Ala.2008). Generally, the denial of a motion for a summary judgment is not reviewable by a petition for a writ of mandamus. A petition for a writ of mandamus, however, is an appropriate means for challenging a trial court’s denial of a motion for a summary judgment when that motion asserts a statute-of-limitations defense based on the plaintiffs failure to state a cause of action against the defendant who was initially named fictitiously. Ex parte International Refining & Mfg. Co., 972 So.2d 784 (Ala.2007).

Discussion

In his petition, Walter argues that Howard’s claims against him pursuant to § 25-5-ll(c), Ala.Code 1975, which provides for actions against co-employees for “willful conduct” in the removal of a safety guard, are governed by a two-year statute of limitations as set out in § 6-2-38(g), Ala.Code 1975. Because Howard was injured on April 23, 2003, and Walter was not added as a defendant until January 31, 2006, Walter claims that the two-year statute of limitations bars Howard’s claims against him. Walter acknowledges that a claim substituting a defendant for a fictitiously named defendant will relate back to the date of the filing of the original complaint if: (1) the plaintiff was ignorant of the identity of the fictitiously named defendant at the time the original complaint was filed and (2) if the plaintiff used due diligence to discover the defendant’s true identity before the statute of limitations expired. Therefore, Walter argues, if Howard knew, or should have known or was on notice, that Walter was the party she described fictitiously in her first amended complaint, her amendment adding Walter as a defendant does not relate back.
Walter also argues that Howard was aware or should have been aware of Walter’s identity at the time she asserted her claims against Emfinger and other fictitiously named defendants on October 7, 2004. Walter further argues that Howard failed to use due diligence in determining the identity of the fictitiously named defendants added in the October 7, 2004, complaint. He points out that shortly after her accident, Howard retained legal counsel, who advised Southeast Pallet by letter that Howard had been injured using a machine that had been designed by Mac with the assistance of certain management *436 employees of Southeast Pallet and that the conduct of those employees constituted “willful conduct” under § 25-5-11. Walter again argues that by December 2003 Howard had documents in her possession that indicated Walter had worked on the design of the machine.
Last, Walter argues that the amendment adding him as a defendant will significantly prejudice him because, he argues, there was such a long delay in adding him that he was justified in believing that he was not going to be named as a defendant in this case.
Rule 9(h), Ala. R. Civ. P., provides: “When a party is ignorant of the name of an opposing party and so alleges in the party’s pleading, the opposing party may be designated by any name, and when that party’s true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name.”
This Court has held with regard to Rule 9(h) and the relation-back principles of Rule 15(c), Ala. R. Civ. P., that the plaintiff must state a cause of action against the fictitiously named party in the body of the original complaint; that the plaintiffs ignorance of the true identity of the party intended to be sued is “in the sense of having no knowledge” of the party’s identity at the time the complaint was filed; and that the plaintiff must have used due diligence in attempting to discover the identity of the fictitiously named party. Columbia Eng’g Int'l Ltd. v. Espey, 429 So.2d 955, 958 (Ala.1983). To be entitled to the benefit of the relation-back principles, the plaintiff must act with due diligence to ascertain the fictitiously named defendant’s true name and to promptly amend the complaint to correctly identify that defendant. The due-diligence standard, as stated in Davis v. Mims, 510 So.2d 227, 229 (Ala.1987), “is whether the plaintiff knew, or should have known or was on notice, that the substituted defendants were in fact the parties described fictitiously.”
In the present case, Howard added Walter as the fictitiously named defendant who was supervising her on the day of the accident and the fictitiously named defendant who had violated § 25-5-11(c)(2), Ala. Code 1975, by removing the safety guard. Section 25-5-11, provides, among other things, an employee the right to maintain an action against an employer for workers’ compensation benefits while at the same time pursuing an action for damages against a third party for that same injury. Section 25-5-ll(b), provides, in pertinent part, that “[i]f personal injui’y ... to any employee results from the willful conduct, as defined in subsection (c) herein, of any ... employee of the same employer ..., the employee shall have a cause of action against the person ....” Subsection (c) provides:
“(c) As used herein, ‘willful conduct’ means any of the following:
[[Image here]]
“(2) The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal; provided, however, that removal of a guard or device shall not be willful conduct unless the removal did, in fact, increase the danger in the use of the machine and was not done for the purpose of repair of the machine or was not part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective.”
We agree with Walter that Howard knew on December 15, 2003, that Walter *437 was, at the very least, Mac’s contact at Southeast Pallet and that he could have knowledge of who had designed or set out the specifications for the machine on behalf of Southeast Pallet. With due diligence, Howard could have discovered Walter’s role in the design of the machine. However, Howard did not substitute Walter for a fictitiously named defendant that had designed the machine. Instead, Howard subsequently obtained information from Emfinger that indicated Walter had been Howard’s supervisor on the day of the accident, that there had been a safety guard on the machine, and that Walter had removed the safety guard on the machine. Howard then substituted Walter as the fictitiously named defendant who had supervised her on the day of the accident and the fictitiously named defendant who had violated § 25-5-ll(c)(2) by removing the safety guard. Any claim that Howard would have had against Walter arising out of the design of the machine would now be barred by the applicable statute of limitations. Nevertheless, Howard’s claim against Walter arises out of his supervising her on the day of the accident and the removal of the safety guard.
In Ex parte Bowman, 986 So.2d 1152 (Ala.2007), the employee was injured while working on a fermenter tank. The employee and his "wife sued the manufacturer of the tank and several fictitiously named defendants, alleging that they had been negligent in designing, manufacturing, and installing the tank. After the statute of limitations had run, the employee and his wife filed a motion to amend their complaint to substitute the quality-assurance manager for one of the fictitiously named defendants. The quality-assurance manager filed a motion to dismiss the claims against him on the ground that the amended complaint did not relate back to the original complaint, which the trial court denied. The manager then petitioned this Court for a writ of mandamus directing the trial court to dismiss him as a defendant. We held that although the employee knew the identity of the quality-assurance manager at the time the original complaint was filed, he was unaware that the manager had also been responsible for acquiring, installing, and modifying the tank. The fact that the employee knew that the manager was in charge of quality control of the product produced was not related to the plaintiffs’ claim. “There is no logical and necessary linkage between knowledge that such an individual [responsible for quality control] was a participant in acquiring, installing, and modifying the machine that makes the product.” 986 So.2d at 1157. This Court denied the manager’s petition. Similarly, in the present case, Howard knew, as early as December 2003, that Walter had some involvement in the design of the machine. However, she did not know, until Emfinger filed his affidavit, that Walter allegedly had been her supervisor on the day of the accident and that he allegedly had removed a safety guard from the machine.
We recognize that the evidence is disputed as to whether the machine was designed without a safety guard or designed with a safety guard that Southeast Pallet failed to install, or whether someone had removed the safety guard. However, that factual dispute is not dispositive of this procedural issue. We leave those factual questions for a jury to decide.
The issue then becomes whether Howard used due diligence in discovering Walter’s identity as her supervisor on the day of the accident or as the person who removed the safety guard. In Oliver v. Woodward, 824 So.2d 693 (Ala.2001), the patient brought a medical-malpractice action against certain real and fictitiously named doctors arising out of the improper *438 placement of a catheter, which resulted in the amputation of the patient’s arm. The patient amended her complaint to substitute Dr. Woodward for one of the fictitiously named doctors. The trial court granted Dr. Woodward’s motion for a summary judgment, and the patient appealed. This Court stated:
“The issue before the Court is when [the patient] knew or should have known Dr. Woodward’s identity as a tortfeasor ‘described fictitiously’ in the complaint.... Dr. Woodward claims that [the patient] knew his identity on November 25, 1998, when [the hospital] identified Drs. Pepper and Woodward as emergency-room doctors on duty between 8:00 a.m. and 3:00 p.m. on March 25, 1995. [The patient] asserts that she did not know Dr. Woodward’s identity as the emergency-room doctor who read [her] X-ray until April 28, 1999, when [the radiographer] identified Dr. Woodward as the emergency-room doctor who read [the patient’s] X-ray and verified placement of [the patient’s] central venous catheter. We agree with [the patient],
“Although on November 25, 1998, [the hospital] identified Dr. Woodward as an emergency-room doctor on duty on March 25, 1995, [the hospital] did not identify Dr. Woodward as the emergency-room doctor who read [the patient’s] X-ray and who verified placement of [her] central venous catheter. [The patient] diligently and reasonably began serially deposing the four doctors identified as working in the emergency room on March 25, 1995. Three of the four doctors, including Dr. Woodward, denied being the emergency-room doctor who read [the patient’s] X-ray. Not until [the patient] deposed [the radiographer] did [the patient] have any notice that Dr. Woodward was the emergency-room doctor responsible for verifying placement of her central venous catheter.”
824 So.2d at 698-99.
In the present case, Howard discovered that Emfinger had been a supervisor and on October 7, 2004, well within the applicable two-year statute of limitations, she amended her complaint to add Emfinger, along with two fictitiously named defendants who had supervised Howard or who had removed the safety device in contravention of § 25 — 5—11 (c)(2). She attempted to serve Emfinger on several occasions. Very shortly after she served Emfinger, Emfinger provided her with the information that Walter had been Howard’s supervisor and that Walter had removed the safety guard. We also note that Mac attempted to depose Walter on several occasions, but that would have been to no avail in discovering Walter’s alleged involvement as one of the fictitiously named defendants because, when Walter was deposed, he denied being at the plant on the day of the accident and denied removing the safety guard.
This Court stated in Ex parte Stover, 663 So.2d 948, 952 (Ala.1995):
“As to Stover’s contention that the plaintiffs failed to exercise due diligence in ascertaining his identity, we hold that our standard of reviewing summary judgments prevents us from holding, as a matter of law, that the Chaverses were not diligent in substituting him as one of the fictitiously named defendants. Ex parte FMC Corp., 599 So.2d 592 (Ala. 1992). In Ex parte FMC Corp., this Court wrote:
“ ‘Although the record indicates that reasonable people could differ as to whether the plaintiffs proceeded in a reasonably diligent manner in identifying [the fictitiously named defendant added by amendment], a writ of mandamus would be proper in this case *439 only if undisputed evidence showed that the plaintiffs had failed to act with due diligence in identifying [the fictitiously named defendant] as the party intended to be sued. 599 So.2d at 595. See Ex parte Klemawesch, 549 So.2d 62 (Ala.1989).’ ”
Walter has not presented undisputed evidence that Howard failed to exercise due diligence in ascertaining his identity.
Last, Walter argues that he would be prejudiced if he were substituted for one of the fictitiously named defendants because, he says, he was justified in believing that he was not going to be a defendant in Howard’s action because it had been pending since 2003 and there were already defendants named in the complaint. “This court has recognized that delay in amending a complaint to substitute a named party for a fictitiously named party once information is available can defeat the availability of relation back.” Ex parte Bowman, 986 So.2d at 1158. The accident occurred on April 23, 2003, and Howard brought her action on June 27, 2003. The statute of limitations would have run on or about April 23, 2005, and Walter was substituted as a defendant on January 31, 2006, very shortly after Howard learned of Walter’s alleged involvement. Walter was aware of the action because Mac had attempted to depose him on several occasions. The purpose of a statute of limitations was not defeated by applying the doctrine of relation-back where Walter was sufficiently alerted to the proceedings from an early stage and Howard promptly amended her complaint.
Because Walter has failed to establish a clear legal right to the relief sought, we deny the petition for a writ of mandamus.
PETITION DENIED.
COBB, C.J., and SEE, LYONS, STUART, SMITH, PARKER, and MURDOCK, JJ., concur.
WOODALL, J., dissents.

. It is unclear what type of business entity Southeast Pallet is.

. Howard has settled her claims against Mac and Fuhrlong, and she has settled her worker’s compensation claim against Southeast Pallet.