494 So.2d 54 (1986)
Ex parte R.B. ETHRIDGE AND ASSOCIATES, INC.; and The Cincinnati Insurance Company.
(In re: ALABAMA PUBLIC SCHOOL AND COLLEGE AUTHORITY, and the Board of Trustees of the University of Alabama, a Corporation v. MARION BRADFORD AND ASSOCIATES, ARCHITECTS; R.B. Ethridge and Associates, Inc.; Cincinnati Insurance Company; et al.)
85-332.
Supreme Court of Alabama.
July 25, 1986.
Frank M. Young III, Jonathan H. Walker, and B. Glenn Murdock of Haskell, *55 Slaughter, Young & Lewis, Birmingham, for petitioners.
Gerald D. Colvin, Jr., of Bishop, Colvin & Johnson, Birmingham, for respondents Alabama Public School & College Auth. and the Bd. of Trustees of the Univ. of Ala.
Paul G. Smith of Smith & Taylor, Birmingham, for respondent Marion Bradford & Associates.
Edgar M. Elliott and Michael K. Beard of Rives & Peterson, Birmingham, for respondent Judge Claude Hughes.
H.H. Grooms, Jr., Ann McMahan and Alan Stephens of Spain, Gillon, Riley, Tate & Etheredge, Birmingham, for respondent Bonitz Insulation Co. of Ala.
HOUSTON, Justice.
R.B. Ethridge and Associates, Inc., and the Cincinnati Insurance Company, Inc., petition for a writ of mandamus directing the Honorable Claude Hughes, Judge of the Circuit Court of Jefferson County, to set aside his order of January 18, 1985, wherein he ordered a separate trial of the petitioners' third-party claim against Bonitz Insulation Company of Alabama.
This case concerns a dispute over the design and construction of the School of Optometry building on the campus of the University of Alabama in Birmingham (UAB).
Plaintiffs, the Alabama Public School and College Authority and the Board of Trustees of UAB, filed suit on June 19, 1979, against Ethridge, the general contractor, alleging defects in the construction of the building, and against Cincinnati, alleging default on its performance bond; plaintiffs, in the same complaint, sued Marion Bradford and Associates, the architectural firm that designed the building. Ethridge and Cincinnati, the petitioners, cross-claimed against Marion Bradford and Associates in the event an adverse judgment is rendered against them. The petitioners subsequently filed a third-party complaint against Bonitz, a subcontractor, seeking indemnity in the event they are held liable for damages resulting from that portion of the building constructed by Bonitz. The petitioners are also seeking indemnity from four other subcontractors.
Bonitz, in turn, filed a fourth-party complaint[1] against Johns-Manville Sales Company, Inc., which manufactured and directed the method of installation of certain materials that Bonitz utilized in the construction of the building. Thereafter, Johns-Manville filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, which effected a stay of Bonitz's action. Upon motion of the plaintiffs, Judge Hughes severed Bonitz's action against Johns-Manville. Bonitz also moved at that time to have the petitioners' action against it separated for trial; however, Judge Hughes denied the motion. Approximately fifteen months later, Bonitz renewed its motion for separate trial and Judge Hughes granted it. He issued an order which, in pertinent part, reads as follows:
"This case came for hearing on January 11, 1985 on the motion for severance filed by the third-party defendant, Bonitz Insulation Company of Alabama (hereinafter referred to as `Bonitz'). After considering the facts, the arguments of counsel, and the applicable law, the court, pursuant to Rules 14(a) and 42(b) of the Alabama Rules of Civil Procedure, hereby orders that the third party claim of R.B. Etheredge[2] and Associates against Bonitz be severed and tried separate from the original claim of the plaintiff against the defendants Marion Bradford & Associates, R.B. Etheredge & Associates and The Cincinnati Insurance Company.
"This is a very complicated construction contract action involving claims by *56 the owner, UAB against its project architect, Marion Bradford, its general contractor, R.B. Etheredge and Etheredge's bonding company, Cincinnati Insurance Company for alleged defects in the construction of the School of Optometry Building on the UAB campus. There is a cross-claim filed by Etheredge against the architect Bradford and Bradford also is maintaining a counterclaim against UAB for payment of the contract sum. Etheredge had a sub-contract with Bonitz Insulation Company to supply and install certain `Corspan' panels in the exterior of the building. These panels were manufactured by Johns-Manville Sales Company, Inc. (hereinafter referred to as `JM'). That action was stayed and the fourth party complaint severed by previous order.
"Discovery has just recently revealed the true nature of the damages claimed by the plaintiff. The court has been advised that there is a serious coverage question between Bonitz and its liability insurance carriers as to whether any of the damages claimed by UAB are covered under the respective policies of insurance. The court hereby takes judicial notice of the pleadings in the case of Bonitz Insulation Company, et al., CV 84 505-116 now pending in the Equity Division of this court in order to have a resolution of the coverage question.
"The indemnity claims of the third party plaintiff only apply to a portion of the total claims made against them by the plaintiff and therefore the witnesses and evidence presented in the main case would not be substantially identical to those presented in the third party claim; that the legal and factual questions to be resolved are sufficiently different to warrant severance; that the trial of all claims including breach of contract, design, error, partial indemnity and claims for product defect would unduly complicate the trial and confuse the jury; that the trial of the third party claim against Bonitz without allowing Bonitz an opportunity to try its fourth party complaint against Johns-Manville would unduly prejudice Bonitz; that because of the substantial dispute as to whether Bonitz is entitled to insurance coverage due and further as it is not known how long it will take to resolve that dispute, it would be fairer to sever the claims; that all claims between the original parties can be resolved without the presence of Bonitz. Based upon all the above factors, the court is of the opinion that a severance of the third party complaint would avoid substantial prejudice to Bonitz without unduly [a]ffecting the rights of the other parties.
"It is hereby ORDERED, ADJUDGED and DECREED that the third party complaint filed by R.B. Etheredge & Associates is hereby severed from the main action and will be tried separately although all parties to the case shall continue to participate in the discovery process."[3]
The sole issue presented to this Court by the petitioners is whether Judge Hughes's order was permissible under Rules 14(a) and 42(b), Ala.R.Civ.P. We find that it was; accordingly, we deny the writ.
Initially, we should note that an order of separation as to a claim brought pursuant to Rule 14 is the result of a trial judge's exercise of his or her discretion. Therefore, our review of Judge Hughes's order will not reach beyond whether he clearly abused his discretion in setting for separate trial the petitioner's third-party claim against Bonitz, and, absent a showing of such clear abuse, his order will not be disturbed. See Ex parte Duncan Construction Co., 460 So.2d 852 (Ala.1984).
Mandamus is an extraordinary writ and, while it will lie to compel the exercise of discretion, it cannot be used to compel the exercise of discretion in a particular manner except where there is an abuse of discretion *57 or when there is a clear showing that the trial judge has exercised his or her discretion in an arbitrary or capricious manner. Duncan, supra.
The petitioners, relying on Duncan, contend that Judge Hughes clearly abused his discretion in separating the claim against Bonitz from the trial of the original action. We disagree.
In Duncan, the general contractor petitioned for a writ of mandamus directing the trial judge to set aside an order that severed the general contractor's third-party claims against its subcontractors on the ground that the case, as consolidated, would have been unduly complicated and too difficult for the jury. This court, recognizing the viability of third-party practice in complex construction cases, found no factual or legal grounds to support the trial judge's order, stating:
"In ruling on a motion to strike or sever, the trial court must weigh the need for one trial involving all issues and parties in furtherance of the stated purpose of the rule against the risk of substantial prejudice to the original parties resulting from an undue complication of issues and evidence because of the addition of the third-party defendants.
"When viewed in the light of this `balancing' test, the circuit court's severance order cannot stand. While the order states that the court `finds that the case will be unduly complicated and very difficult for the jury to comprehend' if the third-party claims are allowed, nowhere does the court set out particular facts or findings in support of its conclusion, nor does the record support such a conclusion. [Emphasis added.]
"Neither does the court indicate how the presumed complexity of the issues and the jury's difficulty in comprehension will result in hardship or prejudice to any party if the third-party claims are tried with the original actions. Further, a finding of complexity alone does not automatically entitle a party to the severance of third-party claims. `The intent of the rules is that all issues be resolved in one action, with all parties before one court, complex though the action may be.' Lasa per L'Industria del Marmo Soc. per Azioni v. Alexander, 414 F.2d 143, 147 (6th Cir.1969).
"We find no factual or legal grounds supporting the trial court's conclusions. We are constrained, therefore, to hold that the court's severance of all third-party claims was done in an arbitrary manner and amounts to an abuse of that court's discretion."
460 So.2d 854.
In the present case, Judge Hughes based his order on Rules 14(a) and 42(b), Ala.R. Civ.P. While Rule 14(a) authorizes a defending party to bring into the pending action a new party who is alleged to be ultimately liable for the claims asserted by the original plaintiff, it also provides that "any party may move to strike the third-party claim or for its severance or separate trial." The Committee Comments to the rule, in part, state:
"The purpose of this practice, [impleader] and of Rule 14 which authorizes it, is to avoid multiple suits. By permitting an entire controversy to be disposed of in one action the rule should save the time and cost of duplication of evidence, obtain consistent results from identical or similar evidence, and do away with the serious handicap to the defendant of a time difference between the judgment against him and the judgment in his favor against the party liable over to him...."
Rule 42(b) reads as follows:
"(b) Separate Trials. The Court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims or issues, always preserving inviolate the right of trial by jury as declared by Article 1, Section 11 of the Alabama Constitution of 1901."
*58 The Committee Comments to Rule 42, in part, state:
"Rule 42(b) gives the trial court a virtually unlimited freedom to order separate trials of claims, issues, or parties, as may seem dictated by convenience and the desire to avoid prejudice. There is no similar provision in present Alabama law, probably because there is no need for such a provision so long as joinder is restricted and law and equity remain unmerged. But the broad joinder provisions of Rules 13, 14 and 18 to 24 place almost no restrictions on joinder at the pleading stage. They leave it to be handled as a matter of trial convenience, and Rule 42(b) is the rule authorizing the Court to make the necessary orders for trial convenience. Further, the merger of law and equity, and the consequent possibility of intermingling of issues to be tried by the jury with issues to be tried by the court, necessitates a rule such as this one which will permit the court to shape the order of trial. An exhaustive study of the practical operation of the rule concludes: ` ... on the whole the separate trial has proved a very flexible and useful instrument for preventing confusion, avoiding prejudice and providing a convenient method of disposing of litigation as fairly and quickly as possible. The rule serves its purpose in modern pleading.' Note, Separate Trial of a claim or issue in Modern Pleading: Rule 42(b) of the Federal Rules of Civil Procedure. [Citations omitted.]
"....
"Rule 42(b) provides that separate trials are to be ordered only where needed `in furtherance of convenience or to avoid prejudice.' Separate trials are not to be granted merely because the matters involved would have been tried separately before the rules were adopted, or because some of the parties might prefer separate trials. It is the interest of efficient judicial administration which is to be considered, rather than the wishes of the parties. [Citation omitted.]"
Thus, Rules 14(a) and 42(b) contemplate that the trial judge will have great flexibility in the management of complex litigation.
We recognize now, as we did in Duncan, that multiple party practice, as available under Rule 14, is particularly viable in complex construction cases where the alleged liability of a general contractor has its origin in the defective performance of one or more of its numerous subcontractors or suppliers. It is indeed a generally desirable goal in this kind of litigation to have only one trial involving all of the issues and parties. However, it must be recognized that that goal is secondary to the concerns of the trial judge in preventing prejudice to the parties. Moreover, the determination as to when a claim should be separated for trial is peculiarly within the province of the trial judge, and, in the absence of a clear abuse of discretion, deference should be given to his or her judgment.
Judge Hughes stated in his order that he was of the opinion that separate trial of the third-party complaint "would avoid substantial prejudice to Bonitz without unduly affecting the rights of the other parties." He further stated "that the trial of all claims including breach of contract, design error, partial indemnity, and claims for product defect would unduly complicate the trial and confuse the jury; that the trial of the third-party claim against Bonitz without allowing Bonitz an opportunity to try its fourth-party complaint against Johns-Manville would unduly prejudice Bonitz."
It appears that Judge Hughes was concerned that, under the particular facts of this case, the trial would be unduly complicated by the presence of Bonitz, resulting in prejudice to the plaintiffs. He was also concerned about the prejudice to Bonitz that could result from its inability to try its fourth-party claim against Johns-Manville. These were sufficient grounds upon which Judge Hughes could base his order setting separate trials.
After careful review, it seems to us that the Court in Duncan was able to determine from the record no support whatsoever in favor of the trial judge's severance order. *59 However, we cannot make such a determination from the record now before us. In the present case, the record, which consists only of certain pleadings and discovery requests, is not sufficient to adequately reveal the apparent complexities of this case and, thus, we cannot look to it to provide a basis for overturning Judge Hughes's order.
Because of the status of the claim against Johns-Manville, the stated goal of having only one trial involving all of the issues and parties cannot be realized in this case. Bonitz will have to try its case against Johns-Manville at a later date. The petitioners insist that the purpose behind Rule 14 should not be further frustrated by allowing the trial judge's order to stand. We are cognizant of the fact that our decision today does possibly set the stage for three separate trials (i.e., plaintiffs against petitioners; petitioners against Bonitz; and Bonitz against Johns-Manville). However, as previously stated, the desirability of having only one trial is secondary to the concerns of the trial judge in preventing prejudice to the parties.
Judge Hughes could not totally prevent prejudice in this case. By the court's separating the claim against Bonitz, the petitioners were obviously prejudiced. However, trial of the case as it stood would have resulted in prejudice to Bonitz because of the pendency of its declaratory judgment action against its liability insurance carrier as well as its inability to try its fourth-party claim against Johns-Manville. Presumably, the plaintiffs also would suffer prejudice as the result of an undue complication of issues and evidence. Faced with this dilemma, Judge Hughes, who has presided over this case for approximately seven years, exercised his discretion and ordered a separate trial of petitioner's claim against Bonitz in an attempt to reduce the prejudice to the plaintiffs and to Bonitz. We are not prepared to hold that he has clearly abused that discretion.
WRIT DENIED.
TORBERT, C.J., and MADDOX, JONES, BEATTY, ADAMS and STEAGALL, JJ., concur.
ALMON and SHORES, JJ., dissent.
NOTES
[1] Although Rule 14, Ala.R.Civ.P., does not refer specifically to the term "fourth-party complaint," it does contemplate that Bonitz's complaint against Johns-Manville will be designated as such. (See last sentence of paragraph (a).)
[2] Although this case came to this Court with the name "Ethridge," some portions of the record spell the name "Etheredge."
[3] It appears to us that the substance of Judge Hughes's order was to separate issues for separate trials and not to sever claims and thereby create independent actions. See Ex parte Palughi, 494 So.2d 404 (Ala.1986).