MALONE, Chief Justice.
Employers Mutual Casualty Company (“Employers Mutual”) appeals from the denial of its motion to intervene in a case pending in the Jefferson Circuit Court. We affirm.

Procedural History

This case is factually and procedurally complex. On May 25, 2010, George Cha-vous, Lorine Chavous, Terrell Hopkins, Raeshonda Hopkins, Sharon Spivey, Cynthia Conner, Kenturah Felton, Kimberly Marable, and Chris Hill (hereinafter referred to collectively as “the initial plaintiffs”) sued Holman Building Co., L.L.C. (“Holman”), and Interior/Exterior Building Supply Company, L.P. (“Interior”), based on alleged problems in newly constructed houses they had purchased in the Hamilton Parc subdivision in 2006 and 2007. In their complaint, the initial plaintiffs alleged that Holman, which constructed the houses, and Interior, which supplied the drywall used in construction, had built and sold them houses constructed with drywall manufactured in China. According to the complaint, that drywall “emits sulfuric gases, causing damage to the home[s]” and to the inhabitants, including the initial plaintiffs. The initial plaintiffs further alleged that the houses “were not built in accordance with the applicable building code and residential eonstr[u]ction industry standards.” Based on these allegations, the initial plaintiffs brought claims individually and on behalf of a class (“the putative class”) of “all persons who own a home in the Hamilton Parc Subdivision located in Birmingham, Alabama which was constructed by Holman Building Co., L.L.C.” Those claims included negligence and wantonness in constructing the houses of improper materials; negligent and wanton repair of the houses; negligent and wanton hiring, supervision, and training; fraudulent and/or innocent misrepresentation; fraudulent suppression; breach of warranty; nuisance; trespass and continuing trespass; conspiracy; ordinary products-liability claims; claims asserted under the Alabama Extended Manufacturer’s Liability Doctrine; deceptive trade practices; and breach of contract. The initial plaintiffs sought compensatory and punitive damages and demanded a jury trial.
On June 15, 2010, Interior filed an answer containing 84 affirmative defenses. On June 25, 2010, Holman filed a motion for a more definite statement of the initial plaintiffs’ fraud claims and alleged 46 affirmative defenses to the complaint.
On June 29, 2010, Holman filed a cross-claim against Interior alleging that Interi- *858 or had supplied Holman with the defective drywall. Holman sought indemnity from Interior and alleged negligence, wantonness, breach of warranty, fraudulent misrepresentation, fraudulent suppression, and breach of contract.
On July 19, 2010, Interior filed a third-party complaint against Knauf Insulation GmbH a/k/a Knauf USA; Knauf Gips KG; Knauf International GmbH; and Knauf Plasterboard Tianjin Co., Ltd. (hereinafter referred to collectively as “the Knauf defendants”), alleging that the Knauf defendants manufactured and sold the defective drywall used in the construction of the houses purchased by the initial plaintiffs. Interior alleged the following against the Knauf defendants: breach of contract, breach of express and implied warranties, and negligence. Interior also sought indemnity and contribution from the Knauf defendants for any liability Interior suffered as a result of this action.
On July 21, 2010, Interior filed an answer to Holman’s cross-claim in which it asserted 84 affirmative defenses to the cross-claim.
On August 6, 2010, the initial plaintiffs, together with additional individuals Evelyn Rodgers and Torey Combs, filed an amended complaint, both in their individual capacities and on behalf of the putative class. (The initial plaintiffs, Rodgers, Combs, and the putative class members are hereinafter referred to collectively as “the plaintiffs.”) In the amended complaint, the plaintiffs asserted the same claims as were asserted in the initial complaint.
On August 16, 2010, Holman filed a renewed motion for more definite statement of the plaintiffs’ fraud claims and asserted 46 affirmative defenses to the amended complaint. On August 28, 2010, Interior filed an answer to the plaintiffs’ amended complaint and reasserted its 84 affirmative defenses to the plaintiffs’ claims. On August 26, 2010, Knauf Insulation GmbH filed an answer to Interior’s third-party complaint and asserted 56 affirmative defenses to Interior’s third-party complaint against it.
On September 2, 2010, Employers Mutual moved to intervene in the action. As grounds for its motion, Employers Mutual stated that it had issued Holman one commercial general-liability (“CGL”) policy for each year from 2001 to 2010 (for a total of 10 CGL policies) and that it had issued Holman one umbrella policy for each year from 2002 to 2010 (for a total of 9 umbrella policies). Employers Mutual further alleged that a number of coverage issues would be presented with regard to which, if any, of the 19 insurance policies would provide coverage for the claims asserted against Holman. Employers Mutual further alleged that each of these coverage issues implicated “important questions concerning coverage to potentially be resolved by the jury.” Specifically, Employers Mutual stated that the following coverage issues would implicate questions of fact for determination by a jury:
“a. A maximum of one (1) of [Employers Mutual’s] CGL policies may ultimately be implicated in the lawsuit and there is a question regarding which policy is potentially implicated;
“b. There is a question regarding whether some or all of the claims alleged against Holman trigger any of the Insuring Agreements of [Employers Mutual’s] policies;
“c. There is a question regarding whether some or all of the claims asserted against Holman allege an ‘occurrence,’ as required by the Insuring Agreements of each of [Employers Mutual’s] policies;
*859 “d. Even if one of [Employers Mutual’s] CGL policies is implicated, there is a question regarding whether some or all of the claims asserted against Holman allege ‘bodily injury,’ as required by the Insuring Agreements of each of [Employers Mutual’s] policies;
“e. Even if one of [Employers Mutual’s] CGL policies is implicated, there is a question regarding whether some or all of the claims asserted against Holman allege ‘property damage,’ as required by the Insuring Agreements of each of [Employers Mutual’s] policies;
“f. There is a question regarding whether any alleged ‘bodily injury[1] or ‘property damage’ commenced during any of [Employers Mutual’s] policy periods, as required by the Insuring Agreements of [Employers Mutual’s] policies;
“g. Even if one of [Employers Mutual’s] CGL policies is implicated, there is a question regarding whether Holman’s knowledge of ‘bodily injury[1] or ‘property damage’ prior to [Employers Mutual’s] policy periods precludes the application of any of the Insuring Agreements of [Employers Mutual’s] policies;
“h. Even if one of [Employers Mutual’s] CGL policies is implicated, there is a question regarding whether some of the Plaintiffs’ claims are barred by the substantive law of the State of Alabama and are due to be dismissed, which means that [Employers Mutual] owes no duty to defend and/or indemnify Holman as to such claims;
“i. Even if one of [Employers Mutual’s] CGL policies is implicated, there is a question regarding whether the following exclusions contained in the policies apply to bar some or all of the claims and/or damages asserted against Holman, in whole or in part, as follows: (1) Expected or Intended Injury Exclusion, (2) Pollution Exclusion, (3) Damage to Property Exclusion, (4) Damage to Your Product Exclusion, (5) Damage to Your Work Exclusion, (6) Damage to Impaired Property Exclusion, (7) Recall of Product Exclusion, (8) the Continuous or Progressive Injury or Damage Exclusion, and (9) the Absolute Exclusion for Fraud, Misrepresentation, Deceit, or Suppression or Concealment of Fact.
“j. Even if one of [Employers Mutual’s] CGL policies is implicated, there is a question regarding whether some or all of the claims against Holman trigger the insuring agreements of one (1) of the Commercial Umbrella policies issued by [Employers Mutual] to Holman, and whether the following exclusions contained in the Commercial Umbrella policies apply to bar some or all of the claims and/or damages asserted against Holman, in whole or in part, as follows: 1) Property Damage — General Exclusion, 2) Property Damage to Your Product, Work, Impaired Property Exclusion, 3) Product Recall Exclusion, 4) Pollution Exclusion, or 5) Continuous or Progressive Injury or Damage Exclusion.
“k. Lastly, each of the umbrella policies issued by [Employers Mutual] to Holman contains Endorsement Form CU7187 (11/88), which provides that the coverage provided by the respective umbrella policies will not be broader than the underlying CGL policies issued by [Employers Mutual].”
Accordingly, Employers Mutual sought permissive intervention pursuant to Rule 24(b), Ala. R. Civ. P., for the limited purposes of participating in discovery and of moving either for a special-verdict form or a general-verdict form with interrogatories pertaining to the numerous coverage issues or for a bifurcated trial to resolve those coverage issues. On September 3, 2010, Holman filed a brief opposing Em *860 ployers Mutual’s motion to intervene. On September 10, 2010, Employers Mutual filed a reply in support of its motion to intervene. On September 15, 2010, the plaintiffs filed an opposition to Employers Mutual’s motion to intervene.
On September 15, 2010, the following letter was filed in the case by the Honorable J. Scott Vowell, the presiding judge of the Jefferson Circuit Court:
“Ladies and Gentlemen:
“A number of Chinese Drywall cases have been filed in Shelby, St. Clair, Tuscaloosa and Jefferson Counties. In order to achieve a ‘just, speedy and inexpensive determination’ of these cases (Rule 1, Ala. R. Civ. P.), the Presiding Judges of the circuits in the counties listed above have decided to coordinate the management of these cases. We also want to work with the [multidistrict litigation] Court in New Orleans in order to avoid duplication of discovery. “At my request, Art Edge, who represents some of the plaintiffs in these cases, has provided me with a list of the pending cases of which he is aware. If any of you know of any other related cases, either pending or about to be filed, please send a copy of this notice to any lawyers who are not on our list. “We invite you to meet with the presiding judges of the four Circuits in Courtroom 370, Jefferson County Courthouse, Birmingham, at 4 p.m. on Wednesday, September 22, 2010, for a discussion about the litigation. While Alabama has no multi-circuit consolidation statute, there is no reason the Bench and Bar cannot be innovative in working together to achieve our mutual goals in this interesting litigation. We urge you to be present and to be prepared to offer your suggestions for our consideration.”
Attached to the September 15, 2010, letter was a computer spreadsheet listing the pending “Chinese drywall” cases: 12 separate cases were pending in the Jefferson Circuit Court; 7 were pending in the Shelby Circuit Court; and 2 were pending in the St. Clair Circuit Court. The Tuscaloosa Circuit Court was listed as having “no pending eases to date.” All the listed cases arose out of claims pertaining to the use of drywall manufactured in China in the construction of houses. The majority of these cases listed numerous individuals as plaintiffs and had multiple defendants.
On September 17, 2010, the trial court entered an order denying Employers Mutual’s motion to intervene. On October 22, 2010, Employers Mutual filed a notice of appeal from that order.

Standard of Review

“Permissive intervention is within the broad discretion of the trial court and the court’s ruling on a question of permissive intervention will not be reversed unless the court clearly [exceeds] its discretion.” Mutual Assurance, Inc. v. Chancey, 781 So.2d 172, 175 (Ala.2000) (citing Universal Underwriters Ins. Co. v. Anglen, 630 So.2d 441, 442 (Ala.1993) (“Universal II”)). On such a review, ‘“a reviewing court is not free to merely substitute its judgment for that of the trial court.’ ” Ex parte Anonymous, 803 So.2d 542, 557 (Ala.2001) (Lyons, J., concurring specially) (quoting In re Jane Doe 01-01, 141 Ohio App.3d 20, 23, 749 N.E.2d 807, 809 (2001) (citations omitted)). Thus, “ ‘ “when we are asked to review a denial of permissive intervention, the question on appeal is not whether ‘the factors which render permissive intervention appropriate under [Alabama] Rule of Civil Procedure 24(b) were present,’ but is rather ‘whether the trial court [clearly exceeded its] discretion in denying the motion.’ ” ’ ” QBE Ins. Corp. v. Austin Co., 23 So.3d 1127, 1130 (Ala.2009) (quoting Universal II, 630 So.2d at 443, quoting in turn New Orleans Pub. *861 Serv. Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 470-71 (5th Cir.1984)).

Analysis

In Universal Underwriters Insurance Co. v. East Central Alabama Ford-Mercury, Inc., 574 So.2d 716 (Ala.1990) (“Universal I ”), this Court “recognized the dilemma faced by insurers in situations where the insured was being sued on claims that might or might not be covered by the insurance policy,” Universal II, 630 So.2d at 443, and adopted a procedure whereby an insurer could seek permissive intervention in such a case for the purpose of seeking a bifurcated trial in which insurance matters would be tried subsequent to the underlying tort claims. QBE Ins. Corp., 23 So.3d at 1131 n. 1. In Universal I, this Court “emphasize[d] that because of the many factors involved, a bifurcated trial is not a matter of right for the insurer, but, rather, the decision of whether to allow intervention under this alternative procedure will rest within the discretion of the trial court as governed by the interests of justice and those factors articulated in Ala. R. Civ. P. 42(b).” Universal I, 574 So.2d at 723-24. See also Chancey, 781 So.2d at 176 (Lyons, J., concurring specially) (“Whether to allow an insurer permissive intervention, pursuant to Rule 24(b), Ala. R. Civ. P., in a tort action against its insured, so that the insurer can invoke Rule 49, Ala. R. Civ. P.,[1] and thereby obtain clarification of coverage issues, falls within the sound discretion of the trial court.”).
Alternatively, an insurer may seek permissive intervention in the underlying tort litigation against the insured for the purpose of requesting a special-verdict form or a general-verdict form aceompa-nied by interrogatories so that it may ascertain the basis of the jury’s verdict in the event the jury finds against its insured. See, e.g., Chancey, 781 So.2d at 174-75; Universal II. In Universal II and Chan-cey, supra, this Court reaffirmed its holding that such intervention was permissive in nature and, thus, was within the “broad discretion” of the trial court. Chancey, 781 So.2d at 175.
Accordingly, as Employers Mutual expressly recognizes, an insurer’s right to intervene in a civil action against its insured — either to seek a bifurcated trial or to request a general-verdict form with interrogatories or a special-verdict form — is permissive only. Chancey, 781 So.2d at 174-75; Universal I; and United States Fid. & Guar. Co. v. Adams, 485 So.2d 720 (Ala.1986). “[A]n insurer has no absolute right to intervene in an action against its insured.” QBE Ins. Corp., 23 So.3d at 1130.
However, Employers Mutual points out that in Universal I and Universal II the insurer seeking to intervene did not request different forms of relief in the alternative. Seizing on this distinction, Employers Mutual asks this Court to hold that, (1) where an insurer meets the criteria for permissive intervention and (2) where, as in this case, the insurer seeks “both forms of relief ..., under Universal I and Universal II, ... a trial court loses its discretion to deny the motion” for permissive intervention. Employers Mutual’s brief, at 17 (emphasis added).
We decline to so hold. A motion for permissive intervention is inherently within the discretion of the trial court. Rule 24(b), Ala. R. Civ. P., sets out the *862 criteria for permissive intervention. The rule provides, in pertinent part:
“Upon timely application anyone may be permitted to intervene in an action ... when an applicant’s claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.”
(Emphasis added.) See also Ex parte Scott, 728 So.2d 172, 184 (Ala.1998) (holding that the use of the word “may” indicates that a procedural rule is permissive rather than mandatory). Nothing in Rule 24(b) deprives a trial court of its discretion to grant or deny a motion seeking permissive intervention merely because the putative intervenor seeks multiple forms of relief in the alternative.
Further, in light of the requirements of Rule 24(b) for permissive intervention, and without substituting our judgment for that of the trial court,[2] we hold that the trial court did not exceed its discretion in denying Employers Mutual’s motion for permissive intervention. Given the complexity of this case, the trial court was clearly within its discretion to deny Employers Mutual’s request to intervene for the purpose of obtaining a bifurcated trial of insurance-coverage issues or a special verdict or a general verdict accompanied by answers to interrogatories.
Moreover, because the trial court was faced with the task not only of managing this single complex case, but also of coordinating its case management with judges in three other circuits as well as with federal multidistrict litigation, this case provides a prime example of the need for discretion in a trial court’s ruling on an insurer’s motion for permissive intervention. As we stated in Universal I:
“The comments to Rule 42(b) ... emphasize that a trial court has broad freedom to order separate trials on different issues or with respect to different parties in order to effectuate the goals of justice and judicial economy.... The Court noted [in Coburn v. American Liberty Ins. Co., 341 So.2d 717 (Ala.1977),] that the trial court is in a ‘position to evaluate, within the posture of the case, the matter of trial convenience and to shape the order of trial. ’ See also Ex parte R.B. Ethridge & Assocs., Inc., 494 So.2d 54 (Ala.1986) (Rule 42(b) gives the trial courts great flexibility in complex litigation cases)....”
574 So.2d at 724 (emphasis added). See also Mangiafico v. Street, 767 So.2d 1103, 1105 (Ala.2000) (“It is well established that a trial court must be vested with the authority ‘to manage its affairs in order to achieve the orderly and expeditious disposition of cases.’ Iverson v. Xpert Tune, Inc., 553 So.2d 82, 87 (Ala.1989).”).
Accordingly, we affirm the trial court’s order denying Employers Mutual’s motion for permissive intervention.
AFFIRMED.
WOODALL, STUART, PARKER, SHAW, MAIN, and WISE, JJ., concur.
*863 BOLIN, J., concurs in the result.
MURDOCK, J., dissents.

. Rule 49 governs verdict forms generally, including general verdicts, special verdicts, and interrogatories.

. When applying the exceeds-its-discretion standard, " 'a reviewing court is not free to merely substitute its judgment for that of the trial court.' ” Ex parte Anonymous, 803 So.2d at 557 (Lyons, J., concurring specially) (quoting In re Jane Doe 01-01, 141 Ohio App.3d at 23, 749 N.E.2d at 809). See also QBE Ins. Corp., 23 So.3d at 1130 (" ' “[W]hen we are asked to review a denial of permissive intervention, the question on appeal is not whether ‘the factors which render permissive intervention appropriate under [Alabama] Rule of Civil Procedure 24(b) were present,’ but is rather 'whether the trial court [clearly exceeded its] discretion in denying the motion.' ” ’ ” (quoting Universal II, 630 So.2d at 443, quoting in turn New Orleans Pub. Serv. Inc., 732 F.2d at 470-71)).